Thank you, everyone. We're going on to case number three, and that case is 22-1168, United States Bank Trust National Association v. Walworth County, Wisconsin. And it's Mr. Dan. Good morning, Your Honor. May it please the court. My name is Mark Dan. I represent U.S. Bank as trustee in this matter. We are the appellant. The facts in the case are not in dispute. This is the most important distinction today is that this case is not about due process of law. This case is about the takings clause of the U.S. Constitution. You know, I'm going to start you right off, because the bank argues that there was no mechanism in which a lien holder could recoup the excess value of the forfeited property. But the bank could have redeemed the entire property early on in the process by simply paying the taxes. Oh, during that eight-week redemption period. And it appears that there was also a second opportunity to reclaim the property during a repurchase period before the county completed a sale to a third party. So my question is this. Was the entire problem caused by the bank's inaction? Your Honor, I agree with your analysis of what happened. And however, I believe the bank could have done a number of things along the way that would have mitigated its own problems. However, I think that analysis is irrelevant to this case and to this determination. The taking pursuant to Article V, I'm sorry, to the Fifth Amendment to the Constitution did not take place. There were two takings, really. One was the taking of the right of the lien, the right to collect the mortgage payment that was taken at the first foreclosure hearing. And then the second time was when the property was alienated by the county and they received proceeds that exceeded the amount of the taxes in positions that were due. The fact that U.S. Bank didn't avail itself of the due process opportunities that it had is irrelevant to the analysis of whether or not, A, that there was a taking, and B, because it's undisputed that the property sold for about $13,000. $13,000 more than the tax in positions that were owed to the county of Walworth. So the taking took place, and again, two times, because by the time that the property was sold, because of the foreclosure that AHP, or I'm sorry, that U.S. Bank was conducting, the property was actually entitled to U.S. Bank at the time that the final decision was made to transfer title to Walworth, which then auctioned the property off to somebody else. But it was not clear that there was a taking of property until the property sold for more than the amount that was due. But the Bill of Rights, Your Honors, is not a buffet of offerings where a citizen can only take one. Each exists independently of the other. The existence of extensive due process cannot relieve the government of its obligation to compensate under the Fifth Amendment. Now, the district court relied on two cases, and there's a third case that was decided after the district court's decision that I'd like to address, because they're kind of the centerpiece of the county's brief. The first is Nelson v. City of New York, which is a U.S. Supreme Court decision, and I just wanted to make sure the court understands how that is distinguishable from the circumstances in this case. In the New York case, there was a mechanism post-taking for owners of property to recover the funds that were available to them. So once the taking was completed, there existed a process under New York law where the taxpayer could seek from the city of New York the amount that they collected in the sale beyond the amount of taxes that were owed. Wisconsin has no similar mechanism. So post-taking, whether it be the taking at the time of the lien interest or the taking at the time of the property interest when the property was sold for more than the taxes were due, after those points, there was no mechanism for U.S. Bank to approach it. There's a footnote in the brief. There is a mechanism, if there is a mistake of law or fact, to raise that issue, almost like on a standard of a motion to vacate a judgment. I'm sorry, forgive me, but I don't think what you're saying is correct. Look, you could have paid the taxes and redeemed the property as soon as you were notified of the problem. Again, you could have answered the in-rent petition and you didn't. The silence and then action results in a default judgment that gives or gave the county what? A fee simple absolute in the land. At that point, of course, the county could sell the land, but the statute gave the owners a second chance at that point. You would have received an amended judgment, removing the property from the in-rem and the whole hand would have been reconveyed to the bank. But you took no steps to protect your interests when the county sold the property. So the surplus belonged to the county and the bank no longer owned the property. So what was there left to take? I mean, I'm really having some difficulty here. And I understand, Your Honor. However, what was left to take, there was nothing to take if the county had kept the property or the property's value was the same or less than the imposition of taxes, then there would have been no taking. Notwithstanding the fact that the bank sat on its rights exactly the way that you described it, Judge Rovner. I'm not living in an alternate universe. But the fact is that the taking didn't occur until there was more money paid to the county. Everybody owes the government its due, but just its due. It is inequitable, and the reason that the takings clause exists and has existed in common law going back to Magna Carta is because it is unfair to impose a burden of additional taxes on a party just because the state legislature created a mechanism that didn't provide them with an opportunity to get the difference at the time of the actual taking. Even if the party had two opportunities, does nothing, just sits there? I understand. And when I first started to look at these cases, Your Honor, I had the exact same reaction. The problem is the taking doesn't occur until the county receives more than the impositions of taxes. Up until that point, there's no taking. And at that point, there is no mechanism for the taxpayer to collect the rest. We should say to the Wisconsin, we should thumb our nose at the Wisconsin courts, which have rejected the claim that property owners have such a right to the surplus when a county has followed the tax sale procedure. I mean, property rights are determined by state law, and it seems to me at this point that our court would be bound by that reading of the law. Your Honor, I think you're referring to the Ritter decision from the Wisconsin Supreme Court that addressed this issue. But again, that analysis was exactly the same as the district court's analysis. It focused solely on the due process argument. It didn't focus at all on the issue of the taking and the lack of a remedy post-taking. And so it is our contention that they got it wrong. Okay, so bottom line, we're not bound by the Wisconsin court's own interpretation of the property interest in the Ritter case, right? Certainly this court isn't bound by their interpretation of the U.S. Constitution, or necessarily bound by their interpretation of the U.S. Constitutional claim here, which exists. The Seventh Circuit can certainly take a different position on whether it's good, even though there's immense due process, that when a taking takes place, that a citizen who ends up, or a corporate citizen in this case, who ends up paying more than their fair share is entitled to get that refunded to them. And would we have to create a circuit? I'm sorry, would we have to create a circuit split with the Eighth Circuit's decision? Yes, and I think it's important, and I know I'm into my rebuttal time, but I'll do my best to address this. The Eighth Circuit, since this decision was issued, issued Tyler v. Hennepin County. There's an important difference between the Hennepin County case and this Walworth County case, because Minnesota affirmatively eliminated common law when it incorporated as a state. Wisconsin actually enshrined common law in its Constitution. Article 14, Section 13 of the Wisconsin Constitution preserved the English common law in the state, and that's been upheld multiple times by the Wisconsin Supreme Court. So this case is distinguished because the property right that existed didn't exist in Minnesota, because it was a common law property right, absolutely exists in Wisconsin. And that's the property right that was taken pursuant to this agreement. The equity in the property, including the difference between the taxes due and the actual value, has always been recognized as a property right under common law in Wisconsin. Mr. Dan, it seems to me what you're really complaining about is the Wisconsin State Court judgment here, and I'm wondering why you're not barred by the Rooker-Feldman Doctrine. You're really asking us to review the decision of the Wisconsin Supreme Court, aren't you? No, Your Honor. This decision was not, this case had never been before the Wisconsin Supreme Court. I understand that, but aren't you, in effect, asking us to take a position different than the Wisconsin Court? Well, there's been a change since that Wisconsin Court decision occurred, and that was in the Nick decision from the U.S. Supreme Court. In the Nick decision, it was Nick v. Township of Scott, Pennsylvania. In that case, the Supreme Court held that one may bring a federal claim for just compensation in federal court, notwithstanding the existence of a state law procedure that will eventually result in just compensation. That was in 2019. The way I read Nick is that it does nothing more than relieve a party of filing suit in state court before bringing a federal action under the Takings Clause. I mean, I don't know how that would... Well, Your Honor, that's what we did here. We're not asking for you to revisit our case or a case that was decided. This is a case of first impression in the Seventh Circuit. And there are other jurisdictions, of course, in the Seventh Circuit as well. If I recall the brief properly, I think what you were trying to say about Nick was that it somehow silently overruled Nelson. Well, it didn't overrule Nelson directly. So the part of Nelson that addresses the issue of whether or not compensation could be sought relies on the fact that New York had a post-taking remedy for the property owner to recover their damages. What Nelson says is that you can bring a claim whether or not there's such a right. Whatever the status of Nelson, however, it does not control this case because it doesn't apply, first of all, to a state where there's no post-taking mechanism for taking the property. I reserve the little bit of time that I have left for rebuttal, if that's all right. Thank you very much. Ms. Schultz? Good morning, Your Honors. May it please the Court? S.D. Schultz, Deputy Corporation Counsel, on behalf of the defendants of Paliz, Walworth County, and Valerie Etzel as Treasurer for Walworth County. U.S. Bank has no property interest in surplus proceeds of the takings clause of either the U.S. or Wisconsin constitutions can protect. Rather, Wisconsin's former in-rem property tax forfeiture law at issue in this case, which I'll refer to as an in-rem proceeding, allowed Walworth County to lawfully retain the surplus proceeds. And this process is constitutional for three reasons. First, the government can enforce property tax collection through property forfeiture as long as notice and due process is afforded within the proceeding. As outlined by Judge Rover in the appellant's argument, U.S. Bank had notice. They had opportunity to avoid the judgment. In the earlier state proceeding? Correct. In the 2019 in-rem proceeding, they had certified mail notice of, well, first of all, as mortgagee, they should have known that that property was under a tax certificate for two years. That could have given them time to timely foreclose on their mortgage at that time. Then, once the in-rem proceeding was filed two years later, they received certified mail notice explaining the redemption period of eight weeks. There's also, by statute, a 30-day answer period. And then, had it not dismissed its own mortgage foreclosure that was running parallel to this matter, it could have been deemed the owner and then subject to the repurchase opportunity, also that the Wisconsin statute affords. So, when the Wisconsin proceedings were finished, the bank was a dead duck. That's your position, right? Their property interest was extinguished. That's correct. By operation of the Wisconsin judgment. Yes, and that's my second point on the constitutionality, that Wisconsin law unequivocally extinguishes a former owner and lien holder's interest at the time of that default judgment. And I highlight the term default because it is. It's their inaction in the proceeding, their inactivity that led to the default. If that is correct, why wouldn't the Rooker-Feldman doctrine apply? Aren't they really asking us to review the failure of the Wisconsin courts to recognize what they think is a continuing property interest in this land? I agree with you. I think the Ritter v. Ross decision is dispositive of U.S. Bank's claim. However, because there wasn't a specific judgment in the appellate courts, I considered whether or not to raise that as an issue, but decided not to because they're bringing that constitutional claim under the U.S. Constitution and not simply the Wisconsin Constitution. That's what they're trying to do. But the fact of the matter is they could have raised that earlier, could they have not? They could have raised what, Your Honor? They could have raised their federal issue in the state proceeding by entering the state proceeding. They could have raised, well, there's a enumerated defense in the in-run procedure. Those enumerations include that the property wasn't subject to the tax or that the tax was paid but somehow was administratively not applied or that there was some sort of fraud or duress. So it doesn't really outline that specific opportunity to challenge constitutionality within the in-run proceeding. Oh, the proceeding is in the state court of general jurisdiction? Yes, it was in the circuit court. Well, certainly that court can't enter a judgment contrary to the Constitution of the United States. Yes, so I deem U.S. Bank's claim to be a constitutional challenge that's post-collection. They're not asking to reopen the judgment. They're not asking the court to change the amount of taxes that are owed or challenge that tax due. They're asking for that post-collection remedy, which I think is what allows the U.S. Bank to bring it before this court. And that was outlined in NIC to some extent, clearly stating that a takings claim can be brought in a federal court without exhausting state remedies. But also there's been a distinction in other federal courts as well. For example, the Minnesota case, Tyler v. Hennepin County, it started in state court and they asked to remove it to federal court, again, because they were challenging that post-collection remedy. And I saw that as what U.S. Bank was attempting to do. That's been pretty common, though, in the country. Some courts seem to be sensitive to Rooker. Some courts don't. Yeah, the Wisconsin statute is silent as to the distribution of surplus proceeds, or the one at issue in this case was. Ms. Stoltz, with regard to the Rosen case, Wisconsin Court of Appeals 1988, does that suggest that there's a common law interest in these sale proceeds? And if it does, was that abrogated by the Ritter case? I'm not familiar with the Rosen case that you cite to, but I do believe that... It was cited in the reply brief. It was cited in the reply brief at pages 5 to 6. I know that the Wisconsin Constitution specifically says that the legislature can abrogate common law. And that's what the legislature has done in this case, even if there's a slight argument that there was a common law interest. But I don't believe that there was one. And the Wisconsin Constitution specifically allows for that abrogation of the common law by the legislature. I believe it's Article 14, Section 13 that says the legislature can redefine the common law. But third, as to the constitutionality here, since the county was the lawful owner at the time the surplus proceeds became available, and this was several months after that default judgment in the proceeding, nothing's been taken from U.S. Bank because their lien was extinguished at the time of default judgment. It's really asking the taxpayers to finish its foreclosure for it, and then still get the check in the mail. And I'm asking this court not to reward U.S. Bank's negligence. And Wisconsin isn't alone in this policy decision by the legislature to not provide a mechanism for former owners to request surplus. States like Arizona, Oregon, Nebraska, and Minnesota, they have similar property tax forfeiture statutes, as well as municipalities such as Boston, Auburn, Suffolk, and New York. And these were all challenged in either state court or federal court and deemed constitutional. And what these cases tell us altogether is that states are free to determine what happens with surplus after a tax forfeiture, if and when that surplus arises. It's important to note that surplus doesn't always arise, as long as that due process is afforded. To your knowledge. All right. You see, if you take a breath, I jump in. I apologize, Your Honor. Oh, no, I apologize. Go ahead. Just go ahead. I ask this court to continue to defer to Wisconsin law in this area, as this is an exercise of the taxing power. And it doesn't violate the Constitution because it follows what Nelson requires, which is notice of the amount owing and an opportunity to avoid the default judgment. And that's, I'm asking this court instead to follow the holding in the neighboring Eighth Circuit, not to create that circuit split that was identified in the appellant's argument. I ask you to follow that because that court provided excellent verbiage, and I'll repeat it for this court. The existence or nonexistence of a mechanism to claim that surplus is a modest factual difference, and it's immaterial. And other district courts in Arizona and Oregon have also said that a mechanism to request the surplus doesn't change the analysis because the analysis is about due process. So when U.S. Bank argues that this case isn't about due process, they're ignoring that Nelson decision because that Nelson decision from the Supreme Court merges these two. If there's one, you can't allege a taking. Your Honor, I do believe the Wisconsin law also appropriately balances the competing interests of property owners with the government's needs to levy taxes for the government services that are properly owing. Ms. Schultz, could you speak at that premise? I think it would be an opportune time for a moment. Could you explain the legislative changes that have taken place in Wisconsin? Yes. In 2021, the legislature did change Wisconsin's law. It now requires that if there is any surplus, that it be sent to the former owner. It doesn't even require that the former owner respond in any way to request that surplus. The treasurer now has to send it out. It also mentions the opportunity for lien holders to access some of that surplus. However, that really hasn't been decided because it talks about liens in existence at the time of the sale. But it's our position that at the time of default judgment, all of those liens are extinguished. So that's a matter that needs to get sorted out. But for this court's analysis, I don't think that the new law is relevant, apart from the clear deference and policy decision that the legislature has. They represent the will of the people, and the will of the people wanted to change the law, and that's what's happened. Under the new law, then, what happens to the tax delinquencies? If the proceeds, presumably any proceeds sent to the former owner, the tax delinquencies or any other liens on the property have already been resolved. Is that correct? That's correct. But I interpret the law still in existence because the new law only dealt with the surplus proceeds. It didn't actually impact 75.521. Okay. But I read the law to say that in exchange for the property taxes that are owed, the county receives that property. There is no lingering balance on that property. There's no remaining delinquent taxes. It ends up being an administrative financial adjustment later. But at that point in time, that title is clear. The tax liens are extinguished. And that's in line as well with an attorney general opinion that even declared that a state income tax lien was extinguished at the time of that default judgment. Is that the one from 1973? Yes. So I am asking that the court follow the Oosterwik decision in Wisconsin also. That was 10 years after the Nelson decision, and it brought up the issue of equity. And so although U.S. Bank may allege that this law is unfair, the Wisconsin Supreme Court has already said that there is no equitable value that the former owner has on the property after this judgment. And Oosterwik really does dictate what is the common law in Wisconsin, and this court should follow that. It is bound by the way that Wisconsin defines the property interests in this matter. So unless the court has additional questions, I ask that you affirm the district court's dismissal of U.S. Bank's claim. Thank you. Thank you, Ms. Scholz. Thank you. Oh, where's Mr. Dan? Mr. Dan, all right, we'll give you your five minutes. I appreciate it. I'll try not to take all of it because I know it's been on. That would be wonderful. It's a long morning, and I appreciate that. I want to just raise a few points in rebuttal. This goes beyond tax collection. Our claim has zero to do with tax collection. Our claim has to do with what the Wisconsin legislature decided to do, exactly what the Wisconsin legislature did in 2021, which is pass a statute that is consistent with the Constitution and stops the taking of property from taxpayers who end up in a tax foreclosure. But when the value of the property that was taken summarily exceeds the amount of the imposition of taxes. So you raised the constitutional issue, forgive me, in state court. I'm sorry. We did not. I don't think we could have. No, the taking didn't occur until the property, two points in our view. The first taking of the lien right was when the judgment issued at the end of the state court foreclosure proceeding. Then the right to the lien on the proceeds was taken. However, the U.S. Bank completed its foreclosure in the interim period of time and was the owner of the property at the time the final judgment entry took place. At that point, even at that point, the taking didn't take place because there was no evidence that the value of the property exceeded the tax impositions. It was only when the county sold the property for more than the tax impositions that that taking took effect. And this is slightly different than the arguments that were made in the Ritter case addressing Judge Ripple's concerns about Rooker Feldman. And just to be clear, those were different parties at a different place in time, and certainly we would not be here trying to ask this court to rule on an appeal of a state court judgment. The owners have a discrete property interest in the equity. The county cannot take it without triggering the constitutional requirement that it pay just compensation. And the Supreme Court addressed this issue in Horn v. Department of Agriculture. The government can't transform property into public property without compensation, and that's also a U.S. Supreme Court precedent in Fabulous Pharmacies v. Beckwith, which I believe the Seventh Circuit has recognized. States effectively, when they re-characterize traditional private property as public property, which is what the Wisconsin legislature did in the pre-2001 statute, they can't avoid the obligation to pay just compensation. Just because the legislature says it's public property doesn't make it public property because the constitutional protection against the taking only attaches at the time the county essentially gets a windfall. Was Ritter wrongly decided? I think Ritter was wrongly decided, but I didn't litigate that case, so I don't have all the details of what was in front of the court. But the Constitution clearly allows—the Fifth Amendment was designed to prevent certain individuals and citizens and corporations from paying more than the amount of taxes that they have due. The confusion between due process and takings is easy to make because there was, as Judge Rovner pointed out, there was a lot of due process that went on, and the equities make this seem a little bit uncomfortable, I'm sure. However, that doesn't abrogate the obligation of the state to compensate its citizens when they take something that they're not entitled to. The state was entitled to the taxes. The state was not entitled to $33,000. They were entitled to $12,000 and change at the time of the—and that money went into the coffers of Walworth County, and it was an amount of value that belonged to the property owner. At the time, it was U.S. Bank. If there are no further questions, I ask the court to reverse and remand to the district court for further proceedings. And I see I did take all my time, so I apologize. Thank you. We appreciate the help from both parties, and the case will be taken under advisement.